# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT L. POWERS, | ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | Case No.   18-cv-1174 |
| STEVE KALLIS, Warden of FCI PEKIN, | ) ) | Honorable Joe B. McDade |
| Respondent. | ) | |

# OPINION & ORDER

Robert L. Powers has brought before this Court a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1). Powers is a federal prisoner currently incarcerated at the Federal Correctional Institution in Pekin, Illinois. For the reasons stated below, the Petition (Doc. 1) is DENIED in part and the TAKEN UNDER ADVISEMENT in part.

### LEGAL STANDARDS

This Court, in its discretion, applies Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts to cases such as these purporting to arise under 28 U.S.C. § 2241. *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 1(b); *see also Poe v. United States*, 468 F.3d 473, 477 n.6 (7th Cir. 2006); *Hudson v. Helman*, 948 F. Supp. 810, 811 (C.D. Ill. 1996) (ruling Rule 4 takes precedence over 28 U.S.C. § 2243's deadlines and gives a court discretion to set deadlines). Rule 4 requires the Court to "promptly examine" the Petition, and dismiss it if it "plainly appears . . . that the petitioner is not entitled to relief." Pursuant to Rule

1

4 then, the Court will examine the Petition (Doc. 1) and determine whether it plainly appears Powers is not entitled to relief.

## BACKGROUND

The following facts are taken from the Petition (Doc. 1) and are assumed true at this stage of the litigation. Powers is serving a prison sentence in the Bureau of Prisons ("BOP"). He is currently being held at the Federal Correctional Institution in Pekin, Illinois ("FCI Pekin"). On or about August 2, 2017, Powers was stopped by correctional officers for a pat down search. One of the officers asked Powers whether he had anything on him he should not. Powers responded that he had three milks on him. The officer said, "Let's have them." Powers reached inside his pants and tossed the three milks on the ground with other items that the officers had apparently recovered from other inmates. One officer told Powers to pick them up and pour them out. Powers refused. He said, "I'm an old man with a sever[e] pinched nerve in my back, I can't bend down and pick up the milk." Dissatisfied, the officer repeated his order and said, "That's a direct order, and I don't care how you do it! But if you don't I'm locking you up!" Powers decided to walk over to the milks and stomp on them, which caused the contents to spew out of their cartons. The first two milks were smashed without incident. However, the third milk was smashed and the milk sprayed onto the officers' pants. Powers was issued a disciplinary report for a Code 224 Assaulting Any Person offense and a Code 226 Possession of stolen property offense.

Powers' defense to the Code 224 offense was that he did not intend to spray the officers with milk. In other words, he never intended for any contact to occur.

Nevertheless, after a hearing Powers was found guilty of the Code 224 offense as well as a Code 305 Possession Of Anything Unauthorized offense. The DHO made this finding despite acknowledging that Powers did not intend to spray the officers with milk. Powers appealed the guilty findings to the Regional and Central BOP offices without success. Powers was sanctioned to twenty-seven days disallowance of good conduct time, fourteen days disciplinary segregation (suspended ninety days pending clear conduct), and ninety days loss of commissary privileges for the Code 224 violation. He was sanctioned to twenty-seven days disallowance of good conduct time, thirty days loss of phone privileges, and thirty days loss of visiting privileges for the Code 305 violation.

## DISCUSSION

### I. The Court May Hear This Petition.

A petition seeking habeas corpus relief is appropriate under 28 U.S.C. § 2241 when a petitioner is challenging the fact or duration of confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000). Because the loss of good-conduct time impacts Powers' release date, his 2241 Petition is appropriately before the Court. *See id.*; *Waletzki v. Keohane*, 13 F.3d 1079, 1080–83 (7th Cir. 1994).

### II. Failure To Provide Due Process By Finding Petitioner Guilty of Assault Without Evidence of Intent.

Powers' first argument is that the DHO denied him due process of law by finding him guilty of a Code 224 assault without any evidence to prove the "intent" component of the offense. The "deprivation of the statutory right under 18 U.S.C. § 4161 to good-

time credit is a deprivation of liberty" and so "the due process requirements of the Constitution must be complied with in any procedure that deprives a federal prison inmate of earned statutory good-time credits." *Brooks-Bey v. Smith*, 819 F.2d 178, 180 (7th Cir. 1987) citing *Hewitt v. Helms*, 459 U.S. 460 (1983). "In the context of a prison disciplinary hearing, due process requires that the prisoner receive (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Jones v. Cross*, 637 F.3d 841, 845 (7th Cir. 2011).

Code 224 offenses are found in 28 C.F.R. § 541.3, which provides that assaulting any person is a prohibited act and it applies when less serious physical injury or contact has been attempted or accomplished by an inmate. No definition of the term "assaulting" is provided. The Seventh Circuit has held that the "lack of specific intent is not a valid defense to assault in the context of a prison disciplinary action." *Id.* at 847.

In *Jones*, an inmate admitted to pushing a prison guard during an altercation but claimed actual innocence. *Id.* at 842. Jones testified during his hearing that he pushed the guard in order to stop the guard from assaulting him. 637 F.3d at 844. Jones argued that he was denied due process of law because he was not permitted to view exculpatory evidence—surveillance video of the incident—prior to the hearing and thus could not present his actual innocence defense. *Id.* at 847. Jones contended that he was actually innocent of assault because he lacked the specific intent to cause physical injury

4

required for assault. *Id.* The Court held "lack of specific intent is not a valid defense to assault in the context of a prison disciplinary action." *Id.* at 847.

The *Jones* court explained that the term "assault" as used in the context of prison regulations "appears to incorporate the concepts of both common law battery and assault." 637 F.3d at 848. The *Jones* court explicitly declined to interpret the term "assaulting" as including a specific intent to harm requirement, which is an element of criminal and common law tort assault. It wrote:

> At common law, assault involved no physical contact (only the threat of such contact), whereas battery did require such contact. *See United States v. Vallery,* 437 F.3d 626, 631 (7th Cir.2006). The BOP's regulation defining prohibited acts by inmates does not include a separate prohibition on battery. Code section 224, which prohibits assault, states that "a charge at this level is used when less serious physical injury or contact has been attempted or accomplished by an inmate." The term "assault," as it is used in section 224, appears to incorporate the concepts of both common law battery and assault. Because the section 224 is not coextensive with common law assault, we see no reason to import an intent requirement. Moreover, battery (which section 224 incorporates) does not require intent to injure, only intent to make the offensive contact. *See* Restatement (Second) of Torts § 13 cmt. c (1965) (liability for tortious battery requires intent "to cause a harmful or offensive contact," and "it is immaterial that the actor is not inspired by any personal hostility to the other, or a desire to injure him"). Jones admittedly intended to push Loftus. Therefore, <u>even if we were inclined to import common law principles to our interpretation of the BOP regulations, Jones possessed the requisite intent</u>.

*Id.* at 848 (emphasis added).

This much of *Jones* is clear: in the context of a prison disciplinary action for assault, intent to cause harm does not matter and therefore, it is no defense to assault that one did not intend to cause harm. This is the law in this circuit. Whether or not *Jones* can be fairly interpreted to hold that it is no defense to assault in the prison

5

context that one did not intend to cause any contact whatsoever to occur is a different question and not one implicated by this case.

The BOP defines assault as "the unconsented touching of another." *See Adkins v. Kallis*, No. 17-cv-1293, Docket Entry 4-2 at 11 (C.D. Ill.) ("You admit during this statement to calling the staff member 'baby,' and apologize for 'bumping, brushing, or almost running into her' and indicated it was an accident and not on purpose. The unconsented touching of another is an assault therefore you were correctly charged."). That definition is consistent with common law battery. *See Mink v. University of Chicago*, 460 F.Supp. 713, 717 (N.D. Ill. 1978) ("Battery is defined as the unauthorized touching of the person of another.").

There is no doubt here that Powers acting upon his own volition caused unconsented contact to the officers to occur. He admits he stomped on the milk carton. He intended that action. That action caused the carton's contents to spew out and onto the officers' pants. Powers cannot now defend his actions on the ground that he did not intend for the milk to spew out and onto the officer's pants because he clearly intended to stomp the milk carton in the first instance. He is unquestionably liable for the results of his decision to stomp the milk cartons. There was no due process violation when Powers was found guilty of assaulting the officers when he caused milk to spew out onto their pants, even though the DHO acknowledged Petitioner did not intend for the milk to contact the officers.

For these reasons, it is readily apparent from the face of the Petition and case law that Powers cannot succeed on his claim that he was deprived due process of the

6

law when he was found guilty of a Code 224 assault without any evidence to prove his intent. Therefore, his claim is denied.

### III. Failure To Provide Due Process By Sanctioning Petitioner With Twenty-Seven Days Loss Of Good Time Credit For The Code 305 Violation.

Powers' next claim is that the DHO denied him due process of law when it penalized him with twenty-seven days loss of good time credit for his Code 305 violation. A Code 305 violation is designated as a moderately severe prohibited act under the regulations. According to its listing of available sanctions for moderately severe prohibited acts, the BOP can either <u>withhold or forfeit</u> earned statutory good time or non-vested good conduct time up to twenty-five % or up to thirty days, whichever is less, or <u>disallow</u> up to twenty-five percent (1-14 days) of good conduct time credit available for a year <u>ordinarily</u>. 28 C.F.R. § 541.3 (emphasis added).

So, it appears from the regulations that the most good time credit that can be disallowed for a single 300 level offense is fourteen days. Powers was disallowed twenty-seven days of good conduct time credit for his 305 offense. Thus, it appears he was sanctioned well in excess of the penalty provided by the regulations. The DHO wrote:

> Experience has shown that inmates in possession of unauthorized items, use the items to sel1, barter, or to obtain something extra that is not issued through normal channels. Allowing this behavior poses problems in managing the inmate population, which threatens the safety and security of the institution. The sanctions imposed by the DHO were taken to express the seriousness of the infraction. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

7

(Doc. 2 at 9). The appeals administrator wrote: "The sanctions imposed in this disciplinary proceeding were commensurate to the severity level of the offense committed and in compliance with policy." (Doc. 2 at 2). This seems patently incorrect as the maximum good time credit that can be disallowed for a single 300 level offense is fourteen days.

The Court believes Powers has a viable claim that the disallowance of twenty-seven days for the Code 305 offense in this instance may be procedurally deficient. Under 28 C.F.R. § 541.3, the sanction available for 300-level offenses for disallowing good conduct time credit is taking away up to twenty-five percent (1-14 days) of available time for a year ordinarily. There does not appear to be a definition for the term "ordinarily", which the Court suspects gives the DHO leeway to deviate from the normal range when the DHO believes deviation is appropriate. But even if the DHO is empowered to sanction an inmate guilty of a 300 level offense with more than fourteen days loss of good conduct time credit, the DHO still needs to explain why such a deviation from the normal range is appropriate. Due process requires the inmate be given reasons for the disciplinary action taken. *Jones*, 637 F.3d at 845.

The Court has reviewed the DHO report and has not found any explanation whatsoever that addresses why the DHO departed upwards from the one to fourteen days range for the offense. Moreover, the appeals administrator seems to be flat out incorrect in his assessment that "the sanction was commensurate to the severity level of the offense committed and in compliance with policy." In short, it does not appear that the DHO's sanction for Powers' Code 305 offense comports with due process.

For these reasons, the Respondent shall respond to the Petitioner's claim that his sanction of twenty-seven days for his Code 305 violation violates due process and show cause as to why the Court should not order Respondent to restore at least thirteen days[1] of Powers' good conduct time credit.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1) The Clerk **SHALL** serve a copy of the Petition (Doc. 1) upon the Respondent.

2) Respondent **SHALL** file an answer, motion, or other responsive pleading within thirty days of the entry of this Order and Opinion. Respondent should address the merits of Petitioner's claim regarding the disallowance of good conduct time credit in excess of the amount authorized by 28 C.F.R. § 541.3 and otherwise fully comply with Rule 5(b) of the Rules Governing Section 2254 Proceedings for the United States District Courts.

3) Petitioner **MAY** file a reply to Respondent's response within fourteen days of being served with the response.

4) Petitioner **SHALL** serve upon the United States Attorney's office a copy of every further pleading or other document submitted for consideration by the Court.

Entered this <u>9th</u> day of July, 2018.

<u>    s/ Joe B. McDade    </u>
JOE BILLY McDADE
United States Senior District Judge

---

[1] Thirteen is the remainder from twenty-seven minus the maximum fourteen days that can be disallowed pursuant to the regulations.